MARTHA J. ZUBER v. GEORGE W. JOHNSON *et al.,* Appellants,

**Sales:** NOTICE TO BUYER.  Plaintiff conveyed land by deed, which
was recorded; but she remained in possession, and several months
afterwards recorded a deed back to her from her grantee, of the
same date as the other, and providing that she would support him
for life, as part of the consideration.  Intermediate the recordation
of the deeds, an attachment was levied on the land as her
grantee's.  After the second deed was recorded, a sale was made,
under the attachment creditor's judgment, to one who had been
told that plaintiff claimed under an unrecorded deed and as a
homestead.  In fact, the deed back to plaintiff was antedated,
not having been made until the day of record.  *Held,* that the
execution purchaser's rights were subject to plaintiff.

**Parol Evidence:** TRUSTS.  Land conveyed to plaintiff on condition
that she should support the grantor for life and afterwards
exchanged for land of a third person, which by mistake, was con-
veyed to plaintiff absolutely.  To rectify the mistake, she conveyed
it to the first grantor, on the agreement that he should reconvey
to her on condition of support.  Thereafter and before he recon-
veyed, the land was seized under an attachment against him.
*Held,* that evidence of the parol agreement for the reconveyance
on condition of support was not inadmissible as ingrafting an ex-
press trust on the deed to the first grantor.

*Appeal from Montgomery District Court.*—HON. N. W.
MACY, Judge.

WEDNESDAY, MAY 10, 1899.

IN 1892 J. E. Gepford owned a certain house and lot
in Red Oak Junction, Iowa, and made a parol agreement

with the plaintiff, then a widow and the head of a family, to support him during his life, and to receive therefor the said house and lot; and, in pursuance of the agreement, plaintiff took possession of the property, and occupied it till 1895, when Gepford deeded plaintiff the property, for the same consideration, and subject to an incumbrance thereon of three hundred dollars. The deed contained the provision for the support, as a part consideration for the property, and a forfeiture clause in case of a failure of support. In May, 1895, this property was exchanged for another property, of greater value, the exchange being made even by plaintiff assuming an incumbrance on the new place of two thousand two hundred dollars. This property was conveyed to plaintiff and Gepford jointly, Gepford then conveying to plaintiff, with the same condition as to support. This property was also occupied by plaintiff. July 1, 1896, plaintiff exchanged this second property for a third one, evenly, the deed being made to her, as it is claimed, by mistake, it being the intention to take the conveyance jointly, as in case of the second property; and, September 9, 1896, to rectify said mistake, she conveyed the new property to Gepford, by warranty deed, under an agreement that he should reconvey to her, with the condition as to support in the deed, which was done March 1, 1897. This last property, when purchased, was under lease, and an assignment of the lease was taken by plaintiff. It is alleged that the first and second property were each occupied by her as a homestead, and that the third was obtained for that purpose, and intended for such occupation as soon as possession could be obtained. In November, 1896, defendant Heitt commenced suit against Gepford, aided by attachment, and levied on the last-acquired property; and it will be remembered that this was after plaintiff had conveyed the property to Gepford, and before Gepford had reconveyed it to her. Judgment was obtained in January, 1897, and the property thereafter sold, on special execution, March 6, 1897, to defendant Hughes. Prior to

June 11, 1896, defendant Johnson became a judgment creditor of plaintiff in justice court, and on that date he filed in the office of the clerk of the district court a transcript of his judgment, and he claims it to be a lien on the property. There are other defendants that need not be noticed. This action is brought to quiet the title in the premises in plaintiff, claiming that Gepford never had any interest in the property except his lien thereon for his support, and that defendant Hughes purchased the property with knowledge of plaintiff's rights, and that the property is exempt as her homestead, and because of pension money applied to its purchase to the amount of four hundred and thirty-four dollars. The district court found for the plaintiff, that the premises were her homestead, exempt from both the Heitt and Johnson judgments, and entered judgment quieting the title in her, as prayed. Defendants Hughes and Johnson appealed.—*Affirmed.*

*J. M. Junkin* and *Ralph Pringle* for appellant Johnson.

*C. E. & P. W. Richards* for appellant Hughes.

*W. F. Dutton* for appellee.

GRANGER, J.—As to appellant Johnson, the only question is whether plaintiff is the head of a family, so that the property is a homestead. We need only say that the fact clearly appears that she is the head of a family, so as to be entitled to the homestead right. As to appellant Hughes, his rights depend on his being protected because of his purchase at the sale on execution. He relies on the then condition of the record, which showed the title in plaintiff, the deed from Gepford having been filed for record March 1, 1897, and his purchase being on the sixth of that same month. But appellant's thought is that, the attachment having been levied November 5, 1896, when the title of record was in Gepford, the lien then attached, and that no

conveyance thereafter could affect such a lien. Some other facts are important. Before the purchase by Hughes, he was informed that plaintiff claimed to own the property by virtue of an unrecorded deed; and on the day of the sale the sheriff, who held the bid of Hughes, was notified that plaintiff claimed the property as her homestead, and held it by warranty deed. It also appears that the deed then on record, although really executed March 1, 1897, was dated back to September 9, 1896 (the date of the conveyance by plaintiff to Gepford), and in the deed is the provision as to support from that date, at least, as a part consideration for the property, which, with the possession in the plaintiff, was sufficient to put Hughes on inquiry to know the facts. The record, as to the information it gave, was somewhat peculiar. The conveyance from plaintiff to Gepford was September 9, 1896, and the deed back to her, although made and filed March 1, 1897, was dated September 9, 1896; so that, when Hughes made his purchase, the record disclosed facts to indicate that the conveyances to and from Gepford were practically simultaneous, which, with the provisions as to support in the deed, and the possession of plaintiff, makes an unusually strong case of notice to put a party on inquiry. The case is in no way within the rule stated in *May v. Sturdivant,* 75 Iowa, 116; *Bonnell v. Allerton,* 51 Iowa, 166, and like cases. In *Rogers v. Hussey,* 36 Iowa, 664, from which appellant quotes, is this language: "The record title would fully explain the fact of possession. It would be natural and reasonable for any one, under such circumstances, to refer the fact of possession to the legal title. No one would think of inquiring whether there was not also an equitable title, antedating the legal title. If it is not probable and natural that such inquiry would be made, the law does not require it to be made." This case, in its facts, is somewhat the reverse of that. Here, the record condition is such that it plainly suggests the probable possession, at least, in plaintiff, at all times.

since the conveyance to her originally. Some importance is attached to the fact that Hughes was notified that plaintiff claimed by virtue of a warranty deed, and that such notice was not of an oral agreement. But the deed itself gave notice of an agreement, so that Hughes was put on inquiry to know what it was. Appellant misapprehends the rule stated in *McCleery v. Wakefield,* 76 Iowa, 529. It states the rule that "a purchaser is bound to take notice of the right under which one in possession claims," but that "he is not chargeable with notice of a right or claim not asserted, or one which may subsequently accrue." The notice here is of matters asserted and relied on.

II. It is claimed that the evidence to show the agreement of Gepford for support was inadmissible, because it ingrafted an express trust on the deed to him of September 9, 1896. The evidence shows the reverse of an attempt to create an express trust. Gepford had an equitable interest to secure his support. The purpose was to secure him in that interest, and nothing more. The intention was to reconvey at once, which was not done, because of sickness and inadvertence, and by the transaction merely to effect a security. The judgment is AFFIRMED.